1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  MITCHELL MORAN DAVID,            )  Case No. 06-CV-0403-BTM (JMA)
                                     )
12                  Plaintiff,       )  **REPORT AND RECOMMENDATION RE**
                                     )  **GRANTING DEFENDANTS' MOTION TO**
13  v.                               )  **DISMISS COMPLAINT AND STRIKE**
                                     )  **PLAINTIFF'S CLAIM FOR PUNITIVE**
14  G.J. GIURBINO, Warden, et al.,   )  **DAMAGES**
                                     )
15                  Defendants.      )  **[Doc. No. 8]**
                                     )
16  ─────────────────────────────   )

17      This matter comes before the Court on Defendants' Motion to

18  Dismiss Complaint and Strike Plaintiff's Claim for Punitive

19  Damages [Doc. No. 8].  Plaintiff has not filed an opposition to

20  the motion.  The Court found the motion suitable for submission

21  without oral argument.  For the reasons set forth below, the

22  Court recommends that Defendants' motion be **GRANTED** in its

23  entirety.

24  **I.    FACTUAL BACKGROUND**

25      Plaintiff, proceeding in pro se, is currently incarcerated

26  at Centinela State Prison ("Centinela").[1]  Plaintiff is Native

27  ─────────────────────

28      [1]The record indicates that Plaintiff was to be released from
    prison on December 17, 2006.  See, e.g., Shipman Decl. at ¶ 6 & Ex. C.
    As of the date of this Order, however, Plaintiff has not filed a
    change of address with the Court.

K:\COMMON\Adler\CASES\David v. Giurbino\r&r re motion to dismiss.wpd                          06cv0403

1  American and is an enrolled member of the Bishop Paiute Tribe.

2  Compl. at 3 & Ex. A.  On December 21, 2003, Centinela prison

3  officials issued Plaintiff a CDC Form 115, or "Rules Violations

4  Report",[2] for not complying with the California Department of

5  Corrections and Rehabilitation's ("CDCR's") grooming regulations

6  by wearing his hair at a length that extended below the shirt

7  collar.  Compl. at 3 & Ex. B.  At that time, California Code of

8  Regulations, Title 15, Section 3062(e) provided:

> A male inmate's hair shall not be longer than three
> inches and shall not extend over the eyebrows or below
> the top of the shirt collar while standing upright.
> Hair shall be cut around the ears, and sideburns shall
> be neatly trimmed, and shall not extend below the mid
> point of the ear.

13  Compl. at Ex. H.  As a result of the Rules Violation Report, the

14  prison assessed 30 days of credit loss against Plaintiff on

15  December 28, 2003.  Shipman Decl. at ¶ 4 & Ex. A.

16       On April 4, 2004, prison officials issued Plaintiff another

17  Rules Violation Report for failing to abide by the grooming

18  regulations.  Compl. at 3 & Ex. C.  The Rules Violation Report

19  noted that Plaintiff's hair was "considerably longer than the

20  allowed standards."  Compl. at Ex. C.  On June 27, 2004, prison

21  officials issued Plaintiff a third Rules Violation Report for

22  failing to comply with the prison's grooming standards.  Compl.

23  at 3 & Ex. D.  Plaintiff was again assessed 30 days of credit

24  loss.  Shipman Decl. at ¶ 4 & Ex. A.  Plaintiff states that he

25  informed prison officials upon each write-up that he wore his

26

27       [2]A CDC Form 115 or "Rules Violation Report" is the document used
   by prison officials to report "misconduct [which] is believed to be a
28  violation of law or is not minor in nature."  See Cal. Code Regs. tit.
   15, § 3312(a)(3).  A CDC Form 115 initiates the prison disciplinary
   process.

hair long because it was part of his cultural and religious beliefs.  Compl. at 3.

On September 28, 2004, Plaintiff appeared before a Unit Classification Committee ("UCC") for an Annual Review.  Compl. at 4 & Ex. F.  The UCC deemed Plaintiff to be a "program failure" and placed him on Work Group/Privilege Group C/C status.  Id.  As a result of his C/C status designation, Plaintiff lost his employment in vocational welding, various privileges, and the ability to earn "good time" or worktime credits.  Id.; see also Cal. Code Regs. tit. 15, § 3044(b)(5)(A) & (f)(3).[3]  According to Plaintiff, he requested to be taken off of "C-status" numerous times but was never referred to the UCC because he remained non-compliant with the prison's grooming standards.  Compl. at 5 & Ex. G.

On September 27, 2005, Plaintiff again appeared before a UCC for an Annual Review.  Shipman Decl. at Ex. A.  At that time, Plaintiff was restored the 30 day loss of credit relating to the December 2003 Rules Violation Report, as well as the 30 days of credit loss relating to the June 2004 Rules Violation Report.  Shipman Decl. at ¶ 4 & Ex. A.[4]

In the meantime, the Ninth Circuit held that the CDCR's grooming regulations for male prisoners violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.

---

[3]California state prisoners who are by classification committee action removed from an assignment for repeated disciplinary rules violations are considered "voluntarily unassigned" in Work Group C.  Group C prisoners earn no worktime credits, enjoy no family visits, and have limited canteen, telephone, yard, and mail access.  Cal. Code Regs. tit. 15, § 3044(b)(5)(A) & (f)(3).

[4]During the UCC Annual Review, Plaintiff was also restored a 90 day credit loss relating to a May 11, 2003 Rules Violation Report, which Plaintiff does not relate to his claims in this case.

1  § 2000cc-1, because the policy was not the least restrictive
2  means to achieve the state's compelling interest in maintaining
3  prison safety and security.  See Warsoldier v. Woodford, 418 F.3d
4  989 (9th Cir. July 29, 2005).  In response to Warsoldier and
5  other litigation, the CDCR filed emergency changes to its
6  grooming regulations.  See Initial Statement of Reasons ("ISOR")-
7  Grooming/Programs, dated Dec. 29, 2005, attached to Compl. at Ex.
8  H.  The new grooming regulations, in relevant part, allowed an
9  inmate's hair to be any length "but [hair] shall not extend over
10 the eyebrows, cover the inmate's face or pose a health and safety
11 risk."  Cal. Code Regs. tit. 15, § 3062(e) (2006).  The changes,
12 which were operative on January 17, 2006, became final on July
13 27, 2006.  Def.'s Mem. at 5; Cal. Code Regs. tit. 15, § 3062 and
14 history thereof.

15     On March 7, 2006, Plaintiff was reinstated to Work
16 Group/Privilege Group ("WG/PG") A1A from WG/PG C/C status with an
17 effective date of September 24, 2004 (i.e., the date on which
18 Plaintiff had been placed on WG/PG C/C status).  Shipman Decl. at
19 ¶ 5 & Ex. B.[5]  This change in Plaintiff's status resulted from
20 the modifications made to the grooming regulations.  See Shipman
21 Decl. at Ex. B.  According to Plaintiff's "Chronological History"
22 at Centinela, all credit losses have been restored, and as of
23 March 9, 2006, Plaintiff's release date had been restored to
24 December 17, 2006.  Shipman Decl. at ¶ 6 and Ex. C.

25 **II.  PROCEDURAL BACKGROUND**

26     On February 22, 2006, Plaintiff commenced this action
27 alleging violations of his civil rights pursuant to 42 U.S.C. §

28

___

[5]This occurred after Plaintiff filed his Complaint on February
22, 2006.

1   1983.  He alleges three counts in his Complaint:  First, that

2   Defendants G.J. Giurbino, the Warden at Centinela, and Jeanne

3   Woodford, the then-director of the CDCR, violated his rights to

4   free exercise of religion and due process under RLUIPA by doing

5   nothing to assist him with respect to the enforcement of the

6   prison's grooming policy against him; second, that Defendants

7   Giurbino and Woodford violated his right to be free from cruel

8   and unusual punishment by doing nothing about the punishment

9   rendered against him for not complying with the grooming policy

10  despite the requirements of RLUIPA; and third, that Defendant A.

11  Hernandez, a Correctional Captain serving as the Commanding

12  Officer on D-Yard, violated his rights to due process, freedom of

13  religion, and freedom from cruel and unusual punishment by not

14  taking him off of "C-status" despite the requirements of RLUIPA.

15  Compl. at 3-5.  Plaintiff seeks $200,000 in general damages,

16  $200,000 in punitive damages, an injunction preventing Defendants

17  from "any type of retaliation, the disciplining of myself along

18  with other Native American practitioners," and "that my [A1A]

19  status be restored, and all 115 write-ups be dismissed[, and] . .

20  . my original release date restored from 2/19/07 to 12/17/06."

21  Id. at 7-8.

22       Defendants have filed a motion to dismiss the complaint and

23  strike the claim for punitive damages pursuant to Rules 12(b)(1),

24  12(b)(6), and 12(f) of the Federal Rules of Civil Procedure.

25  Plaintiff did not file an opposition.

26  **III.  LEGAL STANDARDS**

27       **A.   Motion to Dismiss**

28            **1.   Rule 12(b)(1)**

     A motion to dismiss for lack of subject matter jurisdiction

pursuant to Rule 12(b)(1) may be based on a facial or a factual attack on jurisdiction.  A facial attack challenges the sufficiency of the jurisdictional allegations in the complaint. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  A factual attack, on the other hand, challenges the substance of a complaint's jurisdictional allegations.  St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).  In resolving a factual attack on jurisdiction, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  Safe Air, 373 F.3d at 1039.  The court also "need not presume the truthfulness of the plaintiff's allegations."  Id.

### 2.   Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint.  A claim can only be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  N.L. Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

The court looks not at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Unless it appears beyond a doubt that the

1  plaintiff can prove no set of facts in support of his claim, a
2  complaint cannot be dismissed without leave to amend.  <u>Conley</u>,
3  355 U.S. at 45-46; <u>see also</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1129-
4  30 (9th Cir. 2000).

5      Where a plaintiff appears pro se, the court must construe
6  the pleadings liberally and afford the plaintiff any benefit of
7  the doubt.  <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d
8  621, 623 (9th Cir. 1988).  The rule of liberal construction is
9  "particularly important in civil rights cases."  <u>Ferdik v.</u>
10 <u>Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992); <u>Noll v. Carlson</u>,
11 809 F.2d 1446, 1448 (9th Cir. 1987) ("Presumably unskilled in the
12 law, the pro se litigant is far more prone to making errors in
13 pleading than the person who benefits from the representation of
14 counsel.").  In giving liberal interpretation to a pro se civil
15 rights complaint, however, a court may not "supply essential
16 elements of the claim that were not initially pled."  <u>Ivey v. Bd.</u>
17 <u>of Regents of the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir.
18 1982).  "Vague and conclusory allegations of official
19 participation in civil rights violations are not sufficient to
20 withstand a motion to dismiss."  <u>Id.</u>; <u>see also</u> <u>Jones v. Cmty.</u>
21 <u>Redevelopment Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984).  "The
22 plaintiff must allege with at least some degree of particularity
23 overt acts which defendants engaged in that support the
24 plaintiff's claim."  <u>Jones</u>, 733 F.2d at 649 (internal quotation
25 omitted).

26     **B.   Motion to Strike**

27     Rule 12(f) of the Federal Rules of Civil Procedure allows
28 the court to strike from "any pleading any insufficient defense
   or any redundant, immaterial, impertinent, or scandalous matter."

1  Fed. R. Civ. P. 12(f).  "[T]he function of a [Rule] 12(f) motion

2  to strike is to avoid the expenditure of time and money that must

3  arise from litigating spurious issues by dispensing with those

4  issues prior to trial."  <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697

5  F.2d 880, 885 (9th Cir. 1983).

6  **IV.  DISCUSSION**

7       Defendants seek dismissal of Plaintiff's Complaint on the

8  grounds that:  (1) Plaintiff's claim for monetary damages against

9  Defendants in their official capacities is barred; (2)

10 Plaintiff's demands for injunctive relief and restoration of

11 workgroup status and service credits are moot; and (3) Defendants

12 are each entitled to qualified immunity.  Defendants also seek to

13 strike Plaintiff's claim for punitive damages.  Defs.' Mem. at 4-

14 11.

15      As a preliminary matter, the Court **GRANTS** Defendants'

16 request for judicial notice of the documents attached to the

17 Declaration of L. Shipman, Litigation Coordinator at Centinela,

18 which were submitted in support of Defendants' motion.  These

19 materials constitute the records and reports of an administrative

20 body, which are matters of judicial notice.  <u>See</u> <u>United States v.</u>

21 <u>Ritchie</u>, 342 F.3d 903, 908-09 (9th Cir. 2003); <u>Walker v.</u>

22 <u>Woodford</u>, 454 F.Supp. 2d 1007, 1022 (S.D. Cal. 2006).  Although

23 the Court has considered these materials in ruling on this

24 motion, the Court need not convert the motion to dismiss into a

25 motion for summary judgment.  A motion to dismiss under Rule

26 12(b)(1) may "rely on affidavits and any other evidence properly

27 before the court."  <u>St. Clair</u>, 880 F.2d at 201.  Further, a court

28 deciding a motion to dismiss under Rule 12(b)(6) may consider

   matters of judicial notice without converting the motion into a

1  motion for summary judgment.  <u>Ritchie</u>, 342 F.3d at 908.

2      **A.   Eleventh Amendment Immunity**

3      Defendants seek dismissal of Plaintiff's damages claims to

4  the extent they are based on acts taken in their official

5  capacities.  The Eleventh Amendment bars a prisoner's section

6  1983 claims against state actors sued in their official

7  capacities.  <u>See</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S.

8  58, 66 (1989).  It does not, however, bar damage actions against

9  state officials for acts taken in their personal or individual

10 capacities.  <u>Hafer v. Melo</u>, 502 U.S. 21, 30-31 (1991); <u>Pena v.</u>

11 <u>Gardner</u>, 976 F.2d 469, 472-73 (9th Cir. 1992).  Here, Plaintiff

12 has sued Defendants Giurbino and Woodford solely in their

13 official capacities, and Defendant Hernandez in both his

14 individual and official capacity.  <u>See</u> Compl. at 2.  Thus, this

15 Court recommends that Defendants' Motion to Dismiss be **GRANTED**

16 with prejudice to the extent that Plaintiff seeks damages against

17 Defendants in their official capacities.[6]

18     **B.   Mootness of Claims for Injunctive Relief**

19     Defendants also seek dismissal of Plaintiff's injunctive

20 relief claims on the grounds that the Court lacks subject matter

21 jurisdiction over those claims as they have been rendered moot.

22     To prevail on his request for injunctive relief, Plaintiff

23 must demonstrate the likelihood of irreparable injury and the

24 inadequacy of legal remedies.  <u>See</u> <u>Easyriders Freedom F.I.G.H.T.</u>

25

26     [6]The result of this recommendation, if adopted, would be that, at
   this stage, Plaintiff's injunctive relief claims remain as to each
27 defendant, and Plaintiff's damages claim remains as to Defendant
   Hernandez in his individual capacity only.  No damage claims would
28 remain as to Defendants Giurbino and Woodford.  <u>But see</u> discussion at
   "Mootness of Claims for Injunctive Relief" (Section IV.B) and
   "Qualified Immunity" (Section IV.C) sections, *infra*.

1   v. Hannigan, 92 F.3d 1486, 1495 (9th Cir. 1996).  These

2   well-established standards for injunctive relief must also be

3   viewed in conjunction with the requirements of the Prison

4   Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA").  See Gomez v.

5   Vernon, 255 F.3d 1118, 1128 (9th Cir. 2001) ("Although the PLRA

6   significantly affects the type of prospective injunctive relief

7   that may be awarded, it has not substantially changed the

8   threshold findings and standards required to justify an

9   injunction.").  The PLRA provides, in pertinent part:

10          Prospective relief in any civil action with respect to
            prison conditions shall extend no further than
11          necessary to correct the violation of the Federal right
            of a particular plaintiff or plaintiffs.  The court
12          shall not grant or approve any prospective relief
            unless the court finds that such relief is narrowly
13          drawn, extends no further than necessary to correct the
            violation of the Federal right, and is the least
14          intrusive means necessary to correct the violation of
            the Federal right.

15

16  18 U.S.C. § 3626(a)(1)(A); Gomez, 255 F.3d at 1129.

17          Defendants argue that the 2006 amendments to the grooming

18  regulations and the restoration of Plaintiff's Work

19  Group/Privilege Group status and service credits render

20  Plaintiff's claims for injunctive relief moot.  The Court agrees.

21  "Mootness is like standing, in that if it turns out that

22  resolution of the issue presented cannot really affect the

23  plaintiff's rights, there is, generally speaking, no case or

24  controversy for the courts to adjudicate; no real relief can be

25  awarded."  Smith v. Univ. of Washington Law Sch., 233 F.3d 1188,

26  1193 (9th Cir. 2000).  "Where the activities sought to be

27  enjoined already have occurred, and the . . . courts cannot undo

28  what has already been done, the action is moot, and must be

    dismissed."  Bernhardt v. County of Los Angeles, 279 F.3d 862,

1   871 (9th Cir. 2002); see also Demery v. Arpaio, 378 F.3d 1020,

2   1025-26 (9th Cir. 2004) ("[A] suit for injunctive relief is

3   normally moot upon the termination of the conduct at issue[.]").

4          Further, Plaintiff's claims for injunctive relief do not

5   fall into the recognized exception to moot claims for cases which

6   are "capable of repetition, yet evading review." Roe v. Wade,

7   410 U.S. 113, 125 (1973).  To fit within this exception,

8   Plaintiff must show he is realistically threatened by a

9   repetition of the violation, and that absent court-ordered

10  injunctive relief preventing the harm, he will be subject to

11  immediate and irreparable future injury. City of Los Angeles v.

12  Lyons, 461 U.S. 95, 109, 111 (1983).  Here, there is no realistic

13  threat that the former grooming regulations will be re-enacted or

14  re-applied to Plaintiff. See, e.g., White v. Lee, 227 F.3d 1214,

15  1243 (9th Cir. 2000).  Like the regulation at issue in White,

16  nothing in the amended grooming regulations, their legislative

17  history or the Office of Administrative Law's rulemaking record

18  suggests the amendments are a mere temporary measure enacted by

19  the CDCR.  In fact, the amendments to the grooming regulations go

20  even further than any injunction this Court might issue.  The

21  amendments to the grooming regulations represented a material

22  change in CDCR policy, and are "broad in scope and unequivocal in

23  tone," insofar as they explicitly recognize the CDCR's need to

24  make systemwide changes to comply with RLUIPA's least restrictive

25  means test as well with as the requirements of Warsoldier.[7]  See,

26

27          [7]See ISOR-Grooming/Programs, dated Dec. 29, 2005 at p. 2,
    attached to Compl. at Ex. H ("Existing subsection 3062(f) is

28  renumbered to 3062(e) and amended to allow inmates to maintain their
    hair at any length, but it shall not extend over the eyebrows or cover
    the inmates' face or pose a health and safety risk.  This text is a
    direct result of lawsuits, (Warsoldier v. Woodford, Mayweathers v.

1  e.g., White, 227 F.3d at 1243.

2      Plaintiff has not demonstrated a reasonable expectation or a
3  demonstrated probability that he will again be disciplined in any
4  manner, by way of a loss of credits, loss of privileges, change
5  in WG/PG status, or change of release date, due to the CDCR's
6  former grooming policies.  Defendants have shown that, effective
7  January 17, 2006, the grooming regulation at issue in this case
8  was amended, and is no longer in force, and that any disciplinary
9  measures taken against Plaintiff as a result of the previous
10 grooming regulation have been withdrawn.  The Court finds the
11 record before it sufficient to show the enforcement of the CDCR's
12 former grooming policy "could not reasonably be expected to
13 recur."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.
14 (TOC), Inc., 528 U.S. 167, 189 (2000).  Absent a case or
15 controversy, this Court is without jurisdiction to award any
16 further injunctive relief.  Los Angeles County v. Davis, 440 U.S.
17 625, 631 (1979).  See also Iron Arrow Honor Society v. Heckler,
18 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to
19 decide moot cases because their constitutional authority extends
20 only to actual cases or controversies.")

21     The Court accordingly recommends that Plaintiff's claims for
22 injunctive relief be dismissed as moot.[8]

23 ─────────────────────────

24 Newland, and In re Corey Williams) regarding the religious rights of
   inmates.  The Department has been ordered to comply with [] [RLUIPA]
25 which provides that the government may not impose a substantial burden
   on an inmate's exercise of religion unless the regulation in question
26 furthers a compelling state interest in the least restrictive
   manner.").

27     [8]Because the Court has already recommended that Plaintiff's
28 damage claims against Defendants Giurbino and Woodford, who were sued
   in their official capacities only, be dismissed, the Court's
   recommendation here that the injunctive relief claims be dismissed
   will result in the dismissal of all claims against Defendants Giurbino

1      **C.   Qualified Immunity**

2      Defendants further contend that they are entitled to

3 dismissal pursuant to Rule 12(b)(6) based on their qualified

4 immunity.  The entitlement to qualified immunity "is an immunity

5 from suit rather than a mere defense to liability."  <u>Mitchell v.</u>

6 <u>Forsyth</u>, 472 U.S. 511, 526 (1985) (emphasis omitted).

7 "[Q]ualified immunity operates 'to ensure that before they are

8 subjected to suit, officers are on notice their conduct is

9 unlawful.'"  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)

10 (<u>citing</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001)).  The defense

11 of qualified immunity protects "government officials . . . from

12 liability for civil damages insofar as their conduct does not

13 violate clearly established statutory or constitutional rights of

14 which a reasonable person would have known."  <u>Harlow v.</u>

15 <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982).[9]

16      **1.   Step One - Constitutional or Statutory Violation**

17      The threshold question in a qualified immunity analysis is

18 whether the plaintiff's allegations, if true, establish a

19 constitutional or statutory violation.  <u>Saucier</u>, 533 U.S. at 201.

20 "If no constitutional right would have been violated were the

21 allegations established, there is no necessity for further

22 inquiries concerning qualified immunity."  <u>Saucier</u>, 533 U.S. at

23 _____

24 and Woodford if both recommendations are adopted.  With respect to
Defendant Hernandez, who was sued in both his official and individual

25 capacities, the Court's recommendations thus far, if adopted, will
result in only Plaintiff's claim for monetary damages against

26 Hernandez in his individual capacity remaining.  However, see
discussion at "Qualified Immunity" section (Section IV.C), *infra*.

27      [9]If the Court's first recommendation, concerning Eleventh

28 Amendment Immunity, is adopted (<u>see</u> Section IV.A, *supra*), qualified
immunity need only be considered as to Defendant Hernandez.  In the
event that recommendation is not adopted, qualified immunity should be
considered as to the damage claims against all three defendants.

201; <u>see also</u> <u>Haynie v. County of Los Angeles</u>, 339 F.3d 1071,

1078 (9th Cir. 2003).   The right at issue in this case is found

in Section 3 of RLUIPA, which provides, in relevant part, that

> [n]o government shall impose a substantial burden on
> the religious exercise of a person residing in or
> confined to an institution . . . even if the burden
> results from a rule of general applicability, unless
> the government establishes that the burden furthers a
> compelling governmental interest, and does so by the
> least restrictive means.

<u>Warsoldier</u>, 418 F.3d at 994 (citing 42 U.S.C. §

2000cc-1(a)(1)-(2)) (quotations and emphasis omitted).   For

purposes of RLUIPA, "religious exercise" includes "any exercise

of religion, whether or not compelled by, or central to, a system

of religious belief."   <u>Id.</u> (citing 42 U.S.C. § 2000cc-5(7)(A)).

Defendants do not appear to contest that the first prong of

the <u>Saucier</u> analysis has been met.   <u>See</u> Def.'s Mem. at 8-9

(asking the Court to assume *arguendo* that a violation occurred in

this case).   The Court finds, taking the facts in the light most

favorable to Plaintiff, that Plaintiff has adequately set forth

allegations which, if proved, would show a violation of his

RLUIPA rights.   <u>See</u> <u>Warsoldier</u>, 418 F.3d at 994-1001.

Accordingly, because Plaintiff's allegations survive the first

prong of qualified immunity analysis, the Court must turn to the

next inquiry.

### 2.   "Clearly Established" Law

The second prong of <u>Saucier</u> asks "whether the right was

clearly established."   <u>Saucier</u>, 533 U.S. at 201.   A right is

"clearly established" when its contours are "sufficiently clear

that a reasonable official would understand that what he is doing

violates that right."   <u>Id.</u> at 202.   This does not mean "that an

official action is protected by qualified immunity unless the

very action in question has previously been held unlawful," but rather, that "in the light of pre-existing law the unlawfulness must be apparent."  <u>Hope</u>, 536 U.S. at 739.  The salient question is whether the state of the law at the time gave officials "fair warning" that their conduct was unconstitutional.  <u>Id.</u> at 740. Defendants here argue that it would not have been clear to a reasonable prison official that charging Plaintiff with violations of the then-existing grooming standard, notwithstanding Plaintiff's objections to complying with the standard because of his religious beliefs, was clearly contrary to law.  Defendants set forth two arguments in support of their position:  First, that the officials "were acting and relying upon a duly enacted California regulation"; and second, that "the state of the law at the time did not reasonably put Defendants on notice that enforcing the regulation against Plaintiff was clearly unlawful."  Def.'s Mem. at 9.

As set forth above, Plaintiff alleges that Defendants Giurbino and Woodford violated his rights by doing nothing to assist him with respect to the enforcement of the prison's grooming policy against him or as to the punishment accordingly rendered against him, and that Defendant Hernandez violated his rights by not taking him off of "C-status."  The alleged violations in this case, therefore, arguably occurred between December 2003, when Plaintiff received his first Rules Violation Report in relation to the prison's grooming standards, and was disciplined for his non-compliance, and March 2006, when Plaintiff's WG/PG A1A status was reinstated and he was apparently fully restored to the position in which he would have been had the former grooming standards not been imposed upon him.

1    RLUIPA is relatively new, having only become effective on
2    September 22, 2000.  It was not until the issuance of <u>Warsoldier</u>
3    in July 2005 that the Ninth Circuit applied RLUIPA to
4    California's prison grooming standards.  In <u>Warsoldier</u>, the Ninth
5    Circuit found that the CDCR had failed to demonstrate that its
6    then-existing grooming policy was the least restrictive means
7    necessary to ensure prison safety and security, and held that the
8    plaintiff was likely to prevail on the merits of his RLUIPA claim
9    challenging the grooming policy.  <u>Warsoldier</u>, 418 F.3d at 1002.
10   Before <u>Warsoldier</u>, several courts, including the Ninth Circuit,
11   had addressed whether prison grooming regulations satisfied
12   RLUIPA's predecessor statute, the Religious Freedom Restoration
13   Act ("RFRA"), and concluded that they did.  <u>See</u>, <u>e.g.</u>, <u>May v.</u>
14   <u>Baldwin</u>, 109 F.3d 557 (9th Cir. 1997) (finding Oregon's prison
15   grooming regulations did <i>not</i> violate RFRA); <u>Diaz v. Collins</u>, 114
16   F.3d 69, 73 (5th Cir. 1997) (holding that Texas prison
17   regulations on hair length were related to security and finding
18   the "security interest at stake cannot meaningfully be achieved
19   appropriately by any different or lesser means than hair length
20   standards."); <u>Harris v. Chapman</u>, 97 F.3d 499, 503, 504 (11th Cir.
21   1996) ("We thus join [other courts] in finding that a reasonable
22   hair length regulation satisfies [RFRA's] least restrictive means
23   test.").

24   In light of these cases, and the absence of case law
25   applying RLUIPA to prison grooming standards before <u>Warsoldier</u>,
26   it would not have been apparent to a reasonable official that the
27   CDCR's former grooming policy was unlawful.  Indeed, the opposite
28   conclusion would have been equally, if not more, plausible.
     Thus, it cannot be said that Defendants were on "fair warning"

1  that their conduct, during the time period involved in this case,

2  was unconstitutional.  <u>See Hope</u>, 536 U.S. at 740.  The record

3  demonstrates that Plaintiff's credit losses were restored in

4  September 2005, shortly after the <u>Warsoldier</u> decision, which in

5  turn reinstated his December 17, 2006 release date, and that

6  Plaintiff's WG/PG status was restored in March 2006, shortly

7  after the amended grooming regulations took effect.  Plaintiff,

8  who did not oppose the instant motion, provides no argument that

9  reasonable officials in Defendants' positions would have known at

10  the relevant times that they were violating a clearly established

11  right.  Because Plaintiff has not shown the violation of a

12  clearly established right under RLUIPA, Defendants are entitled

13  to qualified immunity from Plaintiff's claims for damages.

14  Accordingly, the Court recommends that Defendants' request for

15  dismissal based on qualified immunity be **GRANTED**.

16      **D.    Motion to Strike Punitive Damages**[10]

17      Defendants also move to strike Plaintiff's claim for

18  punitive damages pursuant to Rule 12(f) on the basis that

19  Plaintiff has failed to allege any facts entitling him to

20  punitive damages as a matter of law.  Defs.' Mem. at 6-7.

21      Punitive damages are available under section 1983.  <u>See</u>,

22  <u>e.g.</u>, <u>Pac. Mut. Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 17 (1991).

23  However, state officials sued in their official capacities are

24  immune from punitive damages.  <u>See Mitchell v. Dupnik</u>, 75 F.3d

25  517, 527 (9th Cir. 1996).  Therefore, no punitive damages may be

26  sought from Defendants Giurbino or Woodford, who were sued in

27  their official capacities only.

28  _____

[10]The motion to strike is rendered moot if all of the above
recommendations are adopted.

1    In order to be entitled to punitive damages as to Defendant

2  Hernandez, who was sued in both his official and individual

3  capacities, Plaintiff would be required to establish that

4  Hernandez acted with an "evil motive" or demonstrated "reckless

5  callous indifference" to his constitutional rights.  See Smith v.

6  Wade, 461 U.S. 30, 56 (1983).  The Court agrees with Defendants

7  that Plaintiff has not alleged any facts to show that Defendant

8  Hernandez acted with the requisite evil motive or reckless

9  indifference.

10    Accordingly, the Court recommends that Defendants' motion to

11 strike Plaintiff's claim for punitive damages be **GRANTED**.

12   **E.   Other Counts**

13    Finally, Plaintiff's Complaint purports to raise three

14 separate counts.  See Compl. at 3-5.  Upon a close reading of

15 Plaintiff's Complaint, the Court finds that each of the counts

16 arise out of an alleged violation of RLUIPA.  Although the

17 Complaint briefly alludes to "freedom from cruel and unusual

18 punishment" (Count 2) and "due process, freedom of religion, and

19 freedom from cruel and unusual punishment" (Count 3) (see Compl.

20 at 4-5), there is otherwise no indication that Plaintiff intends

21 to pursue any claims other than under RLUIPA.  Even if the

22 Complaint could be construed as attempting to allege a separate

23 claim for cruel and unusual punishment, Plaintiff fails to meet

24 the pleading requirements for such a claim.  In order to assert a

25 claim for cruel and unusual punishment under the Eighth

26 Amendment, a prisoner must satisfy two requirements, including an

27 objective requirement and a subjective requirement.  See Farmer

28 v. Brennan, 511 U.S. 825, 834 (1994); Allen v. Sakai, 48 F.3d

1082, 1087 (9th Cir. 1994).[11]  Plaintiff does not make the

requisite allegations in his Complaint.  Moreover, with respect

to Plaintiff's references to "freedom of religion" and "due

process" in Count 3, Plaintiff himself appears to construe these

as rights arising under RLUIPA.  See Compl. at 3 (alleging

"freedom of religion" and "due process" claims pursuant to RLUIPA

as Count 1).  Accordingly, no separate discussion of any other

constitutional or statutory violations other than those alleged

under RLUIPA is necessary.

## V.   CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court recommends that

the District Judge issue an Order **GRANTING** Defendants' motion to

dismiss the complaint and strike the claim for punitive damages

in its entirety, or, more specifically:

1.  **GRANTING** Defendants' Motion to Dismiss to the extent

that the Complaint seeks damages against Defendants in their

official capacities;

2.  **GRANTING** Defendants' Motion to Dismiss Plaintiff's

injunctive relief claims as moot;

3.  **GRANTING** Defendants' Motion to Dismiss on qualified

---

[11]"Under the objective requirement, the prison official's acts or omissions must deprive an inmate of 'the minimal civilized measure of life's necessities.'"  Allen, 48 F.3d at 1087 (citation omitted).  A prisoner meets the objective requirement by alleging the deprivation of what courts have defined as a basic human need.  Id. at 1088.
The subjective requirement, relating to the prison official's state of mind, requires "deliberate indifference."  Id. at 1087.  "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  The Court must analyze each claimed violation in light of these requirements, for Eighth Amendment violations may not be based on the "totality of conditions" at a prison.  Hoptowit v. Ray, 682 F.2d 1237, 1246-47 (9th Cir. 1982).

immunity grounds; and

    4.  **GRANTING** Defendants' Motion to Strike Plaintiff's claim for punitive damages.

    This report and recommendation will be submitted to the Honorable Barry Ted Moskowitz, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **February 21, 2007**.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the Objections shall be served and filed on or before **March 7, 2007**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

    **IT IS SO ORDERED**.

DATED:  January 22, 2007

Jan M. Adler
U.S. Magistrate Judge